286 So.2d 302

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, INC.**

v.

**Katherine C. GRIFFIN.**

**Civ. 204.**

Court of Civil Appeals of Alabama.

Nov. 21, 1973.

Gaines & Hereford, Talladega, for appellant.

Love, Love & Lawrence, Talladega, for appellee.

HOLMES, Judge.

This is a suit by the insured, Katherine C. Griffin, against her insurer, State Farm Mutual Automobile Insurance Company, Inc. Suit was brought under the uninsured motorist provisions of her policy which provided as follows:

"INSURING AGREEMENT III— UNINSURED AUTOMOBILE COVERAGE

"COVERAGE U—Damages for Bodily Injury Caused By Uninsured Automobiles. To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

The complaint as received by the jury consisted of one count alleging that the plaintiff, insured, while operating a motor vehicle, was injured as a proximate consequence and result of the negligence of Judge B. Highfield, who was an uninsured motorist. The complaint also states that at the time of the injury, the plaintiff's automobile was covered by a policy of insurance with the defendant which contained "uninsured motorist" provisions.

The jury returned a verdict for the plaintiff-insured in the amount of $10,000 and a judgment was entered in accordance therewith. From this judgment, the defendant-insurer has perfected his appeal to this court.

By appropriate assignments of error, the appellant has presented to this court four issues which must be determined.

Appellant contends that the verdict of the jury is contrary to the evidence in

that there was no evidence proving Highfield was uninsured; that appellant should have been allowed to show that appellant had paid Highfield under the liability insurance provisions of the policy on which suit was brought. The appellant also asserts that there is a misjoinder of causes of action in that an action *ex delicto* and an action *ex contractu* are joined in the same count. Finally, the appellant asserts, as a matter law, that the insured must as a condition precedent to an action against his insurer under uninsured motorist coverage bring suit and obtain judgment against the uninsured motorist.

The tendencies of the evidence reveal the following: On December 16, 1970, at about 5:00 P.M., the plaintiff, Katherine Griffin, was driving a car which collided with one driven by Judge B. Highfield. Plaintiff was behind two cars and pulled out to pass them when she met Highfield's car head-on. Plaintiff alleged that Highfield's headlights were not on and that she could not see the oncoming Highfield vehicle. Highfield contended that his lights had been on since he left his place of business in downtown Talladega.

Further tendencies of the evidence show conflicting testimony as to whether the headlights on Highfield's car were in fact on or off. Nelson Bates, the driver of one of the two vehicles in front of the plaintiff, testified that he did not see any car lights coming toward him; and Roy Finch, a passenger in the Bates car, stated by deposition that he did not see a pair of headlights coming toward him. The appellant introduced testimony by Willie Humphries that when Highfield let him out at his house prior to the accident, the headlights were on. The cars collided on Highfield's side of the road, with the left front portion of each car receiving the damages. Alabama Highway 21 is some twenty-two feet wide.

The plaintiff, Mrs. Griffin, sued her insurance company under the uninsured motorist provisions of the policy. The evidence presented by the plaintiff to show Highfield had no insurance, and thereby was an uninsured motorist, was the testimony of Lewis Willoughby, an insurance adjuster for State Farm Mutual Automobile Insurance Company. Mr. Willoughby testified over objection that he made an investigation for State Farm to determine whether Highfield had a policy of insurance in force and that, to the best of his knowledge, Highfield did not have a policy of insurance on his car. On cross examination of this witness, appellant attempted to show that State Farm paid Highfield some $9,250 under the liability provisions of appellee's policy. Objection to the admission of this evidence was sustained.

As noted, this case presents the question whether an insured must obtain a judgment against an uninsured motorist as a condition precedent to recovery against his insurer under his uninsured motorist policy. It appears that such a determination is a case of first impression in Alabama.[1]

At the outset, this court would be remiss in not commenting that we were favored with outstanding briefs by both counsel for appellant and appellee.

Our statute on uninsured motorist coverage appears in Alabama Code, Tit. 36, § 74(62a), and provides in pertinent part as follows:

"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor ve-

---

1. On November 15, 1973, the Supreme Court of Alabama, in State Farm Fire & Casualty Co., Southern Guaranty Insurance Co. et al. v. Lambert, 291 La. 645, 285 So.2d 917, referring to Alabama uninsured motorist statute, makes the following comment: "Moreover, the statute permits the enforcement of the policy provisions by the insured directly against the insurer without first obtaining a judgment against the uninsured."

hicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 74(46) of this title, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer."

Research reveals that several other jurisdictions have dealt with either identical or similar policy provisions in regard to uninsured motorist coverage as that contained in our statute. The majority of jurisdictions have rejected the view that the insured must first secure a judgment against the uninsured motorist as to fault and damages as a condition precedent to bringing suit against the insurer under the uninsured motorist provisions of the policy. See Hill v. Seaboard Fire and Marine Ins. Co., Mo.App., 374 S.W.2d 606; Wheeless v. St. Paul Fire and Marine Ins. Co., 11 N.C.App. 348, 181 S.E.2d 144; Wright v. Fidelity and Cas. Co. of New York, 270 N.C. 577, 155 S.E.2d 100. See also: Winner v. Ratzlaff, 211 Kan. 59, 505 P.2d 606, and cases cited therein at page 609; Widiss, A Guide To Uninsured Motorist Coverage, § 7.16; Couch On Insurance 2d, Vol. 12, § 45:627.

We are aware that some four jurisdictions appear to have adopted views contrary to the majority. These are the states of Georgia, South Carolina, Virginia, and Tennessee. However, we feel the better reasoned view is that supported by the majority, whereby the insured is not required to first sue the uninsured motorist, but may directly sue the carrier of the insurance policy.

■ The legislative purpose in enacting statutes providing for uninsured motorist coverage is to close the gaps inherent in motor vehicle financial responsibility and compulsory insurance legislation. Uninsured motorist coverage is intended, within fixed limits, to provide financial recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages. Wright v. Fidelity and Casualty and Winner v. Ratzlaff, *supra*. It is with this intent of protection in mind that we must construe the statute.

The key words in Tit. 36, § 74(62a), refer to persons insured "who are legally entitled to recover damages." This does not say that suit must first be filed or judgment obtained against the uninsured motorist. Nor does the policy in question, itself, indicate this requirement is necessary. Particular note is made of the insurance policy provision heretofore noted which states that any judgment obtained against an uninsured motorist by the insured shall not be conclusive as between the insured and the company, either on the issue of liability, itself, or the amount of damages. This is so unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

If this provision means what it appears to mean, then any prior judgment against the uninsured would not be binding without the company's prior consent. Put another way, the requirement insisted upon by appellant, if complied with by insured, would be somewhat of a useless act unless permission was first obtained. In this re-

gard, see Phoenix Ins. Co. v. Stuart, 289 Ala. 657, 270 So.2d 792; Gulf American Fire and Casualty Co. v. Gowan, 283 Ala. 480, 218 So.2d 688. The law should not encourage the doing of a useless act.

Further note is made of the provision noted hereinabove providing for agreement or arbitration as the intended method to determine whether the insured is legally entitled to recover damages and the amount thereof, no mention being made of a condition precedent of first obtaining judgment against the uninsured motorist.

The history and context in which the development of uninsured motorist coverage occurred refute the idea of such a condition precedent suit. Widiss, Uninsured Motorist Coverage, § 1.9, in explaining the origin of uninsured motorist provisions, states as follows:

"The antecedent of the uninsured motorist endorsement proposed by the industry committee can be found in the unsatisfied judgment insurance first offered in about 1925 by the Utilities Indemnity Exchange. This insurance provided indemnification when the insured showed both (1) that he had reduced a claim to judgment and (2) that he was unable to collect the judgment from the negligent party. Such insurance was available from several companies during the years from 1925 until 1956. When the uninsured motorist coverage became generally available, the unsatisfied judgment insurance was abandoned. It should be noted that the uninsured motorist endorsement—as proposed and subsequently issued—differed significantly from its predecessor in that it eliminated the requirement that the insured obtain a judgment against the uninsured motorist prior to recovering under his policy."

The imposition of the requirement that the insured must first sue the uninsured motorist would, in our judgment, transfer uninsured motorist coverage into unsatisfied judgment insurance, its own antecedent. In our opinion, this certainly was not the intent of the legislature when enacting our statute.

One must, then, make a determination as to what the words, "legally entitled to recover damages," mean. They mean that the insured must be able to establish fault on the part of the uninsured motorist, which gives rise to damages, and must be able to prove the extent of those damages. In a direct action by the insured against the insurer, the insured has the burden of proving in this regard that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability. Note that the insurer would have available, in addition to policy defenses, the substantive defenses that would have been available to the uninsured motorist. See Winner v. Ratzlaff, *supra*; Application of Travelers Indemnity Company, Sup., 226 N.Y.S.2d 16; Cox, Uninsured Motorist Coverage, 34 Mo.L. Rev. 1, 34 (1969). We feel that, in the instant case, the appellee adequately and sufficiently met all of these requirements. This court also feels that a contrary holding to the effect that an insured must sue the uninsured motorist leads one directly into cases of multiple litigation which is never desirable. There is a public interest to avoid multiple litigation whenever it is possible to do so in a fair and workable manner.

Upon consideration of the above, we hold that it is not requisite to recovery that judgment must be obtained against the uninsured motorist as a condition precedent to bringing suit against his uninsured motor liability carrier.

As to able and experienced counsel's contention that the trial court erred to reversal in that an action *ex delicto* and *ex contractu* are joined in the same count, we find no merit.

The count merely shows facts attempting to establish that the insured is entitled to recover damages from the driver

**432**

of the uninsured vehicle. The contract of insurance requires that the insured prove that he is legally entitled to recover damages against the uninsured, and the action does not become a tort action by his alleging these facts, but is an action *ex contractu*. See Augustus v. Republic Steel Corp., 100 F.Supp. 46, reversed, 5th Cir., 200 F.2d 334; Hill v. Seaboard Fire and Marine Ins. Co., *supra*.

As to appellant's contention that the jury verdict is contrary to the evidence, we cannot agree. As in all cases involving a jury verdict, we have reviewed the verdict in the instant case with a presumption of correctness. Furthermore, as here, where the trial court refuses to grant a motion for a new trial, that presumption is strengthened. Gleichert v. Stephens, 291 Ala. 347, 280 So.2d 776; 2A Ala.Dig. Appeal and Error ☞930(1).

Appellant asserts that appellee failed to prove that Highfield was in fact an uninsured motorist. Appellee called Louis Willoughby as a witness. Mr. Willoughby was the insurance adjuster for State Farm who testified that he investigated the accident and did not find a policy of liability insurance in force and effect on the Highfield car. We are of the opinion that this testimony provided at the very least a scintilla of evidence to take the matter to the jury. In fact, the court in Hill v. Seaboard Fire and Marine Ins. Co., *supra*, was faced with a similar situation and held the testimony of an insurance adjuster as being sufficient to go to the jury.

Appellant argues that the court erred in refusing to allow him to show that the insurer had paid to Highfield, the uninsured motorist, some $9,250 under the liability provision of the insured's policy as a result of the accident in question. Appellant contends that this testimony was relevant in that it would tend to show the impartiality of Highfield and, further, ". . . it showed the attitude of the appellant in performing under the contract entered into with the plaintiff and the jury was entitled to have this information in its overall consideration of the various interests of the parties and the witness Highfield and Willoughby [adjuster] in this action."

The law in Alabama is settled that the determination of whether evidence is relevant is largely within the discretion of the trial court. Furthermore, evidence may be excluded where it would serve comparatively little or no purpose except to arouse passion, prejudice or sympathy of the jury. See State Board for Registration of Architects v. Jones, 289 Ala. 353, 267 So.2d 427 (a case in which the author of this opinion, while a practicing attorney, participated on the side that did not prevail); American Pamcor, Inc. v. Evans, 288 Ala. 416, 261 So.2d 739; 9 Ala.Dig. Evidence ☞99. It could be said that this testimony would be prejudicial to the plaintiff in that his insurer believed its insured to be at fault, which was a question to be determined by the jury.

In this instance, we cannot say the trial court abused this discretion.

Applying the above stated principles to the instant case, and allowing those inferences most favorable to the appellee, we find that the appellant's assignment that the verdict is contrary to the evidence presented is not well taken.

In view of the above, and having considered the assignments of error, the decree of the trial court is due to be affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.