**PROGRESSIVE CASUALTY INSURANCE COMPANY, Appellant,**

v.

**William KRAAYENBRINK, Jr., Respondent,**

**Ronald C. Gathje, et al., Defendants,**

**State Farm Insurance Company, Respondent.**

No. C5–84–746.

Court of Appeals of Minnesota.

July 2, 1985.

Review Denied Sept. 19, 1985.

Daniel J. Heuel, Muir, Heuel & Carlson, P.A., Rochester, for Progressive Cas. Ins. Co.

Thomas Wolf, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, for William Kraayenbrink.

Jeffrey Hanson, Dunlap, Keith, Finseth, Berndt & Sandberg, Rochester, for State Farm Ins. Co.

Considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This appeal arises from a declaratory judgment action commenced by appellant Progressive Casualty Insurance Company, for a determination of the validity of its denial of underinsured motorist benefits to its insured, respondent William Kraayenbrink, Jr. Kraayenbrink counterclaimed for a declaration of coverage in his favor.

Kraayenbrink was injured when his motorcycle was struck by an automobile owned by Ronald Gathje and driven by Jeffrey Gathje. Kraayenbrink settled a personal injury claim against the Gathjes and their automobile liability insurer, State Farm Insurance Company, for the policy limits. The settlement included a general release. The next day Kraayenbrink applied for underinsured motorist benefits from his own insurer, Progressive. This was the first notice Progressive had of the accident and settlement.

Progressive denied Kraayenbrink's claim on grounds that (1) he had destroyed Progressive's right of subrogation by releasing the Gathjes before giving notice of the accident or proposed settlement to Progressive and thus violated the insurance contract; and (2) no underinsured motorist benefits were available to Kraayenbrink because the Gathje vehicle did not meet the policy definition of "underinsured."

Cross-motions for summary judgment were filed on stipulated facts, and the trial court granted judgment against Progressive.[1] We affirm.

1. This appeal was originally dismissed for Progressive's failure to file its brief on time. The dismissal was reversed and remanded by the Supreme Court for reconsideration under *Boom v. Boom*, 361 N.W.2d 34 (Minn.1985). 365

## FACTS

On August 15, 1980, William Kraayenbrink incurred personal injuries and property damage when the motorcycle he was riding was struck by a car owned by Ronald Gathje and operated by his son, Jeffrey. The extent of the damage from personal injuries is in dispute; however, Kraayenbrink claims it exceeds $100,000. The Gathjes carried automobile liability insurance with respondent State Farm Insurance Company, with residual liability limits of $100,000 per person.

On February 1, 1983, State Farm, on behalf of the Gathjes, paid Kraayenbrink $100,000 in settlement of his personal injury claim and $3,000 in settlement of his property damage claim. In exchange Kraayenbrink gave the Gathjes and State Farm a general release. On February 2, 1983, Kraayenbrink made a claim for underinsured motorist benefits on his own policy with Progressive. This was the first notice Progressive had of the accident and of the negotiated settlement and release between Kraayenbrink and the Gathjes and State Farm.

Kraayenbrink's policy contained the following "notice" provision:

> In the event of an accident or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

The Progressive policy also contained an "exhaustion" clause:

> The company shall not be obligated to make any payment because of bodily injury to which this insurance applies and which arises out of the ownership, maintenance or use of an underinsured motor vehicle until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time

of the accident have been exhausted by payment of judgments or settlements.

The policy defines "underinsured motor vehicle" as:

> [A] motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of accident is less than the applicable limits of liability under this insurance.

The applicable limits of liability under the Progressive policy are $25,000/$50,000, while the limits on the Gathje vehicle are $100,000.

The Progressive policy also included the following "exclusion" clause:

> The policy does not apply under Part IV [protection against uninsured and underinsured motorists]:
>
> \* \* \* \* \* \*
>
> (b) to bodily injury to an insured while occupying a motor vehicle (other than an insured automobile) owned by a named insured or any resident in the same household, or through being struck by such a motor vehicle.

Progressive denied Kraayenbrink's claim on grounds that (1) he had no right of action against Progressive because he destroyed its subrogation rights by releasing the Gathjes before giving notice of the accident or proposed settlement and thus violated the insurance contract; and (2) underinsured motorist benefits are not available to Kraayenbrink because the Gathje vehicle did not meet the policy definition of "underinsured."

The parties stipulated that Ronald Gathje was employed at IBM and owned personal, non-exempt assets which would have been available for Progressive's subrogation claim had Gathje not been released by Kraayenbrink.

Progressive brought this action requesting a declaratory judgment that there is no coverage available to Kraayenbrink under his underinsured motorist policy with Pro-

N.W.2d 229 (Minn.1985). The appeal was then reinstated with oral argument waived.

gressive. Kraayenbrink counterclaimed for the insurance benefits. The parties filed cross-motions for summary judgment and submitted the case to the trial court on stipulated facts. The trial court granted judgment against Progressive.

### ISSUES

1. Did the trial court err in granting summary judgment based on disputed issues of material fact?

2. Did the trial court err in finding that the general release executed by Kraayenbrink as part of the settlement with the Gathjes and State Farm, without prior notice to Progressive, did not preclude Kraayenbrink from recovering underinsured motorist benefits?

3. Did the trial court err in finding that the policy definition of "underinsured motor vehicle" invalidly excluded Kraayenbrink's injuries from coverage and in reforming the policy?

### DISCUSSION

#### I

■ Progressive argues that the trial court's summary judgment was improper because it is based on findings regarding Kraayenbrink's state of mind, a disputed fact. Summary judgment may be granted if "there is no genuine issue as to any material fact." Minn.R.Civ.P. 56.03. The nonmoving party has the benefit of that view of the evidence which is most favorable to him and is entitled to have all doubts and factual inferences resolved against the moving party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981).

The matter was submitted by the parties based on stipulated facts, Progressive's insurance policy, and the release. Kraayenbrink's reasoning in not notifying Progressive of his accident or proposed settlement was not a part of that record. However, in his reply memorandum Kraayenbrink argued that the exhaustion and exclusion clauses in Progressive's insurance policy contained language which reasonably caused him to believe he was permitted to settle with the tortfeasor before giving notice to Progressive. On this issue the trial court found:

16. The language of the Exhaustion Clause led Kraayenbrink to reasonably believe that he was required, or at least allowed, to settle with the Gathjes and State Farm before he would be able to collect from Progressive. This would justify his failure to give Progressive notice of claim prior to the execution of the release.

17. The language of the Exclusion Clause led Kraayenbrink to reasonably believe that he had no coverage under the Progressive policy for the motorcycle accident. This would justify his failure to notify Progressive of his claim prior to the release.

■ Despite the trial court's use of language which appears to make a factual finding, Kraayenbrink argues that the court actually made a legal interpretation of language in the insurance policy based on the "reasonable person" standard. As Kraayenbrink points out, this is entirely proper. "The terms of an insurance policy should be construed according to what a reasonable person in the position of the insured would have understood the words to mean rather than what the insured intended the language to mean." *Canadian Universal Insurance Co., Ltd. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn. 1977).

■ We agree with Kraayenbrink. The trial court arrived at a legal conclusion as to the impact that the exhaustion and exclusion clauses could reasonably have had on an insured such as Kraayenbrink. Kraayenbrink's actual state of mind was irrelevant to this question and its resolution. Although the trial court's finding is worded in such a way that it appears to be a determination of fact, it is actually a legal conclusion. Thus, the trial court did not grant summary judgment based on a disputed material fact but, rather, construed the contract terms and came to the legal conclusion that ambiguities in the pol-

icy language would justify the insured's failure to give notice.

## II

Progressive argues that by releasing the Gathjes and State Farm before giving notice of the accident or proposed settlement, Kraayenbrink destroyed Progressive's contractual subrogation rights and thereby destroyed his own right of action against Progressive for underinsurance benefits. Kraayenbrink responds that the language of the policy itself either encouraged or permitted him to settle with the tortfeasor without first giving notice to Progressive.

 The general rule is that a settlement and release of an underinsured tortfeasor will not automatically preclude recovery of underinsurance benefits. *Schmidt v. Clothier*, 338 N.W.2d 256, 262 (Minn.1983). When an insured party has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurance carrier has the opportunity to protect its subrogation rights by paying the underinsurance benefits before the release, the release will not preclude recovery of underinsurance benefits. *Schmidt*, 338 N.W.2d at 263. If the tortfeasor is released before the insurance carrier makes payment to its insured, however, subrogation rights do not arise. *Schmidt*, 338 N.W.2d at 262.

 We conclude that the exhaustion clause could have led a reasonable person to believe that settlement without prior notice was permissible. While the notice clause in the policy requires the insured to notify Progressive "as soon as practicable" after an accident, the language of the exhaustion clause could lead an insured reasonably to believe it would not be practicable to contact Progressive until all other liability limits were exhausted.

 The presence of the clause in Kraayenbrink's policy which purported to exclude the motorcycle on which he was riding provides further justification for his failure to notify Progressive until after the settlement and release. A reasonable person could have read the clause to mean there was no underinsurance coverage if the insured was riding a motorcycle. Several months before Kraayenbrink executed the release, however, the Minnesota Supreme Court struck down as a violation of public policy the type of exclusion clause contained in the Progressive policy, holding that underinsurance coverage is not subject to the No-Fault Act's motorcycle exclusions. *See American Motorist Insurance Co. v. Sarvela*, 327 N.W.2d 77, 78 (Minn. 1982). After this decision, Progressive had the opportunity to notify Kraayenbrink of the change in his coverage. Had Progressive done so, Kraayenbrink would have learned he had coverage for the motorcycle accident, and Progressive could have protected its potential subrogation rights. Having failed to remove the misleading and invalid clause, Progressive cannot now escape liability for underinsurance benefits by taking advantage of whatever misunderstanding the provision created.

 As noted by the trial court, Progressive wrote the policy, and it must bear the consequences of placing ambiguous or misleading language in it. Any reasonable doubts as to the meaning of the policy language must be resolved against the insurer. *Maher v. All Nation Insurance Co.*, 340 N.W.2d 675, 679 (Minn.Ct.App. 1983), *pet. for cert. denied* (Minn. April 25, 1984) (citing *Columbia Heights Motors, Inc. v. Allstate Insurance Co.*, 275 N.W.2d 32, 36 (Minn.1979)). Because the failure to give notice was justified by the misleading policy language, we agree with the trial court that the release does not preclude Kraayenbrink from recovering underinsurance benefits for uncompensated injuries, despite the destruction of Progressive's subrogation rights.

## III

The Gathjes carry automobile liability insurance with limits of $100,000. The applicable limits of liability under the Progressive policy are $25,000/$50,000. Because the limits of liability on the Gathje vehicle exceed the limits under the Progressive

policy, Progressive argues that the Gathje vehicle does not meet the policy definition of an underinsured motor vehicle, and Kraayenbrink has no underinsurance coverage. Kraayenbrink claims the clause is invalid, and the trial court agreed.

 The trial court recognized that the purpose of underinsurance is to protect the insured party from suffering uncompensated injuries as a result of an accident with an inadequately insured motor vehicle. *See Myers v. State Farm Mutual Automobile Insurance Co.,* 336 N.W.2d 288, 291 (Minn.1983). This purpose reflects one of the primary goals of the No-Fault Act, which is "to promote full, but not over-, compensation for all motor vehicle related injuries." *Pfeffer v. State Automobile and Casualty Underwriters Insurance Co.,* 292 N.W.2d 743, 747–48 (Minn.1980). The focus of underinsurance is, therefore, the amount of damages an insured party suffers for which the tortfeasor is not insured.

 Progressive's policy definition, however, conditions payment of underinsurance benefits upon the relative liability limits of Kraayenbrink and the tortfeasor. According to the policy definition, Kraayenbrink is unable to collect because the limits of the Gathjes' policy exceeded the limits of his underinsurance, even though he suffered additional uncompensated damages. This is contrary to the policies of the No-Fault Act. Moreover, Progressive's policy definition provides coverage which is almost totally illusory. Underinsurance benefits for which Kraayenbrink paid premiums would only be available when the tortfeasor is insured under an out-of-state policy having liability coverage lower than $25,000/$50,000, the Minnesota minimum. Such a definition of underinsurance coverage is contrary to the purpose of the No-Fault Act. *See Holman v. All Nation Insurance Co.,* 288 N.W.2d 244, 250–51 (Minn.1980).

In addition, the set-off provision under which the policy's underinsured motorist coverage limits are reduced by the liability coverage payments also violates public policy. Minnesota has a clear policy of providing insurance coverage to the maximum extent possible so that losses will be spread widely through insurance coverage, rather than resting on one or a few unfortunate and ill-fated individuals. *See id.*

Progressive argues that the *Holman* rule is no longer vital since the 1980 legislature repealed Minn.Stat. § 65B.49, subd. 6 (the mandatory offer provision). *See* 1980 Minn.Laws ch. 539, § 7. In *Hoeschen v. South Carolina Insurance Co.,* 349 N.W.2d 833 (Minn.Ct.App.1984), *pet. for review granted* (Minn. Oct. 19, 1984), this court dealt with a definition of underinsured motor vehicle essentially identical to that found in the present case. We said:

The repeal of section 65B.49 subd. 6(e) appears to have been in response to the perceived problems of a mandatory offer provision, involving burdens of proof and standards to be applied in determining whether an offer has been made to an insured. The offer of underinsured benefits was made optional, rather than mandatory, to relieve those problems. It has not changed the nature of the coverage. Our Supreme Court has made it clear that it will void policy exclusions even though the coverages are optional rather than mandatory, thereby permitting stacking of benefits. *American Motorist Insurance Co. v. Sarvela,* 327 N.W.2d 77 (Minn.1982). *Cf. Burgraff v. Aetna Life & Casualty Co.,* 346 N.W.2d 627, at 630 (Minn.1984). Consequently, *Holman* remains a judicial guidepost * * *.

*Id.* at 838.

Because the Minnesota Supreme Court has agreed to review *Hoeschen,* we do not expressly rely on it; however, we adhere to the reasoning and principle enunciated therein. Thus, we hold that the trial court did not err in reforming Kraayenbrink's insurance policy to provide underinsurance benefits.

## DECISION

The trial court did not grant summary judgment based on disputed issues of mate-

rial fact and did not err in concluding that Kraayenbrink was not precluded from recovering underinsurance benefits.

Affirmed.