Mr. Wonderful Brown's automobile struck the automobile driven by the plaintiff, Ms. Jan Harrell Hardy, and seriously injured Ms. Hardy. Brown's insurer, United States Fidelity and Guaranty Company, settled with Ms. Hardy, who admittedly endorsed a check from U.S.F. G. The record does not contain a copy of this check, nor does it contain a copy of a written release relieving Brown from all further claims arising out of the automobile accident.
Ms. Hardy then filed this action against Progressive Insurance Company, alleging that at the time of the accident she had in force a policy of insurance issued by Progressive that provided uninsured motorist coverage to Ms. Hardy and that Wonderful Brown was an underinsured motorist at the time of the accident in which Ms. Hardy was injured. Ms. Hardy further alleged that Progressive had been provided "with proof of loss and other information required by law and the terms of said policy, all within the time and in the manner and form required by law and the terms of said policy . . ., and that [Ms. Hardy] has fully complied with all the terms of said policy and has performed all other conditions required by law and the terms of said policy." Ms. Hardy demanded a jury trial.
Progressive filed an answer, which included as a defense the following: "That the complaint fails to state a claim upon which relief can be granted." Subsequently, Progressive filed a counterclaim for declaratory relief in which it admitted that the policy was in force at the time of the accident, and that it provided uninsured motorist coverage, but alleged that Ms. Hardy had received payment from U.S.F. G. and executed a release relieving Brown from all further claims arising out of the automobile accident. Progressive further alleged in its counterclaim:
 "[T]his Release would frustrate any subrogation rights against Mr. Wonderful Brown and/or his insurance company that Progressive may have, in direct violation of the contract of insurance between it and Ms. Hardy providing for such subrogation rights [the policy provisions were attached]. [Progressive] also contends that it should be relieved of any obligation it may have to the insured under the uninsured motorist provisions of the policy due to such interference with its subrogation rights."
The attached policy included this provision:
"5. [Progressive's] Recovery Rights (Subrogation)
 "In the event of any payment under this policy, [Progressive is] entitled to all the rights of recovery of the person to whom payment was made against another person or organization. [Ms. Hardy] . . . must assign and deliver to [Progressive] any legal papers relating to that recovery, do whatever else is necessary to help [Progressive] exercise those rights and do nothing after loss to prejudice [Progressive's] rights."
In Ms. Hardy's answer to the counterclaim, she admitted that she had received payment from U.S.F. G., Brown's insurer.
The case action summary shows that the "Declaratory Judgment Act Hearing was set March 1, 1988 at 11:00 A.M." Pursuant to an inquiry by this Court, this Court has been informed that no testimony was taken at this hearing.[1] There is no record that the jury demand was waived. On March 2, 1988, the following order was signed by the trial judge and filed with the Clerk:
 "I find that [Ms. Hardy's] claim against [Progressive] on her underinsured motorists' coverage is barred by her release from liability of the tort-feasor under the principles set out in *Page 887 American Liberty Insurance Company v. Burch, 42 Ala. App. 31, 151 So.2d 405 (Ala. 1963). I have therefore entered judgment in favor of the defendant on its counterclaim and have dismissed the plaintiff's complaint with prejudice and tax costs against her."
From this, Ms. Hardy appeals; and, in the statement of the case in her brief, she recites that this is an appeal from a summary judgment. This is not disputed in Progressive's brief.
The record is without documentation to support the trial court's action. Therefore, the judgment must be reversed and the cause remanded. We call Code of Alabama, § 32-7-23 (b)(4), to the attention of the parties and the trial court:
 "(b) The term `uninsured motor vehicle' shall include but not be limited to, motor vehicles with respect to which:
"`. . .
 "`(4) the sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover."
This section must be read into every policy in this State providing "uninsured motorist coverage." State Farm Auto. Ins.Co. v. Baldwin, 470 So.2d 1230, 1232 (Ala. 1985).
Underinsured motorist coverage applies where the negligent or wanton tort-feasor has some liability insurance but does not have enough to fully compensate the victims of his negligence or wantonness. Underinsured motorist coverage provides compensation to the extent of the insured's injury, subject to the insured's policy limits. It is an umbrella coverage that does not require the insurer to pay to its insured the amount of the tort-feasor's bodily injury liability limits, as those limits pertain to the insured. Therefore, the insurer has no right to subrogation insofar as the tort-feasor's limits of liability are concerned. Its right of subrogation would be for sums paid by the insurer in excess of the tort-feasor's limits of liability.
Some insurance companies have renounced their rights of subrogation for underinsured motorist coverage by provisions within the policies. See, i.e., Silvers v. Horace Mann Ins.Co., 90 N.C. App. 1, 367 S.E.2d 372 (1988); and Branch v.Travelers Indem. Co., 90 N.C. App. 116, 367 S.E.2d 369 (1988). When this has not been done, some courts have fashioned a procedure to release an insured victim from the twilight zone that he is placed in between underinsured coverage and an insurer's right to subrogation. Schmidt v. Clothier,338 N.W.2d 256 (Minn. 1983); Vogt v. Schroeder, 129 Wis.2d 3,383 N.W.2d 876 (1986); Hamilton v. Farmers Ins. Co. of Washington,107 Wn.2d 721, 733 P.2d 213 (1987). Schmidt v. Clothier, supra, involved two unrelated cases that were consolidated, in which plaintiffs were underinsured motorist insureds of Safeco Insurance Company. Each insured was offered a settlement by the respective tort-feasors' carrier, to which Safeco refused to consent. Each insured sought an order authorizing him to accept the settlement and to release the tort-feasor without an impairment of his rights to recover underinsured motorist benefits from Safeco. The trial judge granted the relief, but gave Safeco a 10-day period in which it could pay its insureds the settlements offered by the tort-feasors in order to preserve Safeco's subrogation rights. The Supreme Court of Minnesota affirmed, but held that 30 days from the written notice of the tentative settlement agreement was a more reasonable time period. The court concluded that the option afforded Safeco a reasonable accommodation of all the conflicting interests involved.
In United Services Automobile Association v. Allen,519 So.2d 506 (Ala. 1988), this Court held that the trial court did not abuse its legal or judicial discretion in enjoining the insurer from withholding its permission and consent for its insured to accept the tort-feasor's policy limits. In that case, the insurer had refused to consent for almost one year after the consent was requested. In Progressive Cas. Ins. Co. v.Kraayenbrink, 370 N.W.2d 455 (Minn.Ct.App. 1985), the Minnesota Court of Appeals, in holding that an insured's release *Page 888 
of an underinsured tort-feasor did not preclude the insured from recovering underinsurance benefits for uncompensated injuries from his insurer, Progressive, despite the destruction of Progressive's subrogation rights, wrote:
 "The general rule is that a settlement and release of an underinsured tort-feasor will not automatically preclude recovery of underinsured benefits. Schmidt v. Clothier 338 N.W.2d 256, 262 (Minn. 1983). When an insured party has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurance carrier has the opportunity to protect its subrogation rights by paying the underinsurance benefits before the release, the release will not preclude recovery of underinsurance benefits. Schmidt, 338 N.W.2d at 263. If the tortfeasor is released before the insurance carrier makes payment to its insured, however, subrogation rights do not arise."
370 N.W.2d at 460.
Ms. Hardy alleged that she has complied with all the terms of the policy and performed all other conditions required by law and by the terms of the policy. If so, the trial court erred. It is necessary for this to be fully developed.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] Only the clerk's record was filed. The clerk of this Court was informed that the hearing on March 1, 1988, was not transcribed. Ms. Hardy did not invoke her rights under Rule 10 (d), Alabama Rules of Appellate Procedure, nor was an agreed statement of the record filed in accordance with Rule 10 (e), Alabama Rules of Appellate Procedure.