551 So.2d 333 (1989)
PROGRESSIVE SPECIALTY INSURANCE COMPANY
v.
Ellis Monroe HAMMONDS.
87-1247.
Supreme Court of Alabama.
September 15, 1989.
*334 Tony S. Hebson of Hebson & Miller, Birmingham, for appellant.
Jerry B. Oglesby of Sides, Oglesby, Held & Dick, Anniston, for appellee.
ADAMS, Justice.
Progressive Specialty Insurance Company ("Progressive") appeals from a summary judgment granted in favor of Ellis Monroe Hammonds on Progressive's third-party claim against Hammonds. The trial court made the summary judgment final, pursuant to Rule 54(b), A.R.Civ.P.
On January 19, 1987, Hammonds's automobile, in which James Scott Fuller was a passenger, collided with a second vehicle. As a result of that accident, Fuller sustained serious injuries and subsequently died. At the time of the accident, Hammonds carried automobile liability insurance with Alfa Mutual Insurance Company ("Alfa")[1]; Hammonds's insurance had a $25,000 coverage limit for Fuller's injuries and death. Scott Fuller was covered by the underinsured motorist provisions of two policies of automobile insurance issued by Progressive to his father, James R. Fuller.
James R. Fuller was appointed executor of his son's estate, and, in that capacity, he retained a lawyer in connection with the accident that killed his son. The lawyer, on March 5, 1987, wrote Reynolds Insurance Agency:
"I represent James R. Fuller in connection with his claims arising out of the death of his minor son, Scott Fuller, on January 19, 1987. It is my understanding that the owner of the vehicle in which Scott was riding, the driver of which appears from the State Trooper report to have been at fault in connection with the accident, is insured by Alabama Farm Bureau Insurance Company with coverage of only $25,000.00.
"My client has two insurance policies obtained through you in which Progressive Specialty Insurance Company of Cleveland, Ohio is the insurer. These policies provide for uninsured and underinsured motorist coverage in what appears to be total coverage of $80,000. Under these circumstances, it appears that there is the possibility of a substantial recovery against Progressive Specialty Insurance Company. I shall appreciate it if you will notify them of this claim and ask them to have someone contact me about it at an early date."
Progressive wrote the lawyer on March 17, 1987, stating that it had received the March 5 letter and that it was investigating the accident. The lawyer and Progressive continued a course of correspondence, with the lawyer writing Progressive on March 26, April 17, and May 21, and Progressive replying on April 6, April 24, and May 22, respectively. The lawyer repeatedly asked Progressive to make a decision either to deny or to pay the claim, and Progressive consistently replied that it was still investigating the claim, that a decision either to deny or to pay the claim would be reached "in the very near future."
On June 9, 1987, nearly five months after the accident, James R. Fuller, as executor of his son's estate, executed a pro tanto release, releasing Hammonds from all liability for the injuries and death of his son in exchange for $25,000, the proceeds of the Alfa liability policy. The release stated that Fuller expressly reserved his right, as executor of his son's estate, to proceed against Progressive for the underinsured motorist benefits available under the policies issued by it.
On June 10, 1987, Fuller's lawyer wrote Progressive again, informing it that Fuller had signed a pro tanto release of Hammonds and that Alfa had paid its $25,000 policy limit. Progressive responded on *335 June 25 by writing a letter that once again promised "to evaluate this claim in the very near future." On June 29, Fuller filed an action against Progressive, seeking to recover the underinsured motorist benefits allegedly due him under his policies with Progressive.
Progressive answered and filed a third-party complaint against Hammonds. Both Hammonds and Progressive filed motions for summary judgment. On June 7, 1988, the trial court entered summary judgment in favor of Hammonds on Progressive's third-party claim, stating as follows, in pertinent part:
"... The Court finds that Progressive Specialty Insurance Company's right to subrogation is dependent ultimately upon the Third Party Defendant's liability to the Plaintiff. Since the liability of the Third Party Defendant, Ellis Monroe Hammonds, has been released by the Plaintiff the claim alleged in the Third Party Complaint is thereby lost.
"At the time of the execution of the pro tanto release, the Plaintiff owned all the cause of action as to the tort-feasor, Ellis Monroe Hammonds, and no subrogation claim existed. By releasing the tort-feasor, Ellis Monroe Hammonds, from any and all claims, the plaintiff has effectively destroyed Progressive Specialty Insurance Company's right to subrogation from Ellis Monroe Hammonds.
". . . .
"Based on the Findings of Fact stated hereinabove and the Conclusions of Law, the ... Motion of the Third Party Defendant, Ellis Monroe Hammonds, for a summary judgment ... is hereby granted.
"It is further ORDERED, ADJUDGED AND DECREED by this Court that there is no just reason for delay, and it is directed that this ... summary judgment in favor of the Third Party Defendant, Ellis Monroe Hammonds, be entered as a final judgment under the provisions of Rule 54(b), Alabama Rules of Civil Procedure."
Progressive argues that the trial court erred when it certified its summary judgment as a final judgment pursuant to Rule 54(b), A.R.Civ.P. That rule states:
"When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment...."
The trial court's order makes an "express determination that there is no just reason for delay" and directs an entry of judgment, as required by the rule; accordingly, the order is valid on its face. Progressive seems to be arguing that the trial court erred in determining that there was "no just reason for delay." Progressive cites Precision American Corp. v. Leasing Service Corp., 505 So.2d 380 (Ala.1987), and Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala.1987), apparently for the proposition that the trial court cannot enter a final judgment on only part of a single claim. Progressive's right to recover damages from Hammonds on its third-party claim is related to Hammonds's liability to Fuller, as stated in Ala.Code 1975, § 32-7-23, which provides that underinsured motorist coverage is for the benefit of persons "who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury ... including death, resulting therefrom." Such a claim sounds in tort. On the other hand, Fuller's claim against Progressive sounds in contract. Accordingly, the cases Progressive cites are inapposite, because in this case more than one claim is involved. In Benefield v. Aquaslide `N' Dive Corp., 406 So.2d 873, 875 (Ala.1981), we stated that when one claim lies in tort and another claim lies in contract, such a distinction between the claims would be sufficient to support a Rule 54(b), A.R.Civ.P. certification. Accordingly, the trial court did not err when it made its summary judgment final pursuant to Rule 54(b), A.R.Civ.P.; Benefield, supra.
Progressive argues that, because it allegedly did not know that Fuller was executing the release before he executed it, the *336 trial court erred when it held that the release executed by Fuller destroyed its subrogation rights. In both Hardy v. Progressive Insurance Co., 531 So.2d 885 (Ala. 1988), and Auto-Owners Insurance Co. v. Hudson, 547 So.2d 467 (Ala.1989), the Court has recently addressed an insurer's subrogation rights in relation to an insured's claim for underinsured motorist benefits.
In Hardy, we reversed a summary judgment for Progressive Insurance Company on Hardy's claim for underinsured motorist benefits. Mr. Wonderful Brown's automobile struck the automobile driven by Hardy and seriously injured her. Brown's insurer, United States Fidelity and Guaranty Company, settled with Hardy. Hardy then filed an action against Progressive, alleging that at the time of the accident she had in force a policy of insurance issued by Progressive that provided underinsured motorist coverage and alleging that Brown was an underinsured motorist. The trial court granted Progressive's motion for summary judgment, and we reversed, because the record did not contain any documentation to support the trial court's judgment. In making that holding, the Court stated:
"Some insurance companies have renounced their rights of subrogation for underinsured motorist coverage by provisions within the policies. See, i.e., Silvers v. Horace Mann Ins. Co., 90 N.C. App. 1, 367 S.E.2d 372 (1988); and Branch v. Travelers Indem. Co., 90 N.C. App. 116, 367 S.E.2d 369 (1988). When this has not been done, some courts have fashioned a procedure to release an insured victim from the twilight zone that he is placed in between underinsured coverage and an insurer's right to subrogation. Schmidt v. Clothier, 338 N.W.2d 256 (Minn.1983); Vogt v. Schroeder, 129 Wis.2d 3, 383 N.W.2d 876 (1986); Hamilton v. Farmers Ins. Co. of Washington, 107 Wash.2d 721, 733 P.2d 213 (1987)."
Hardy, supra, at 887.
The opinion further stated:
"In Progressive Cas. Ins. Co. v. Kraayenbrink, 370 N.W.2d 455 (Minn.Ct.App. 1985), the Minnesota Court of Appeals, in holding that an insured's release of an underinsured tort-feasor did not preclude the insured from recovering underinsurance benefits for uncompensated injuries from his insurer, Progressive, despite the destruction of Progressive's subrogation rights, wrote:
"`The general rule is that a settlement and release of an underinsured tortfeasor will not automatically preclude recovery of underinsured benefits. Schmidt v. Clothier, 338 N.W.2d 256, 262 (Minn.1983). When an insured party has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurance carrier has the opportunity to protect its subrogation rights by paying the underinsurance benefits before the release, the release will not preclude recovery of underinsurance benefits. Schmidt, 338 N.W.2d at 263. If the tortfeasor is released before the insurance carrier makes payment to its insured, however, subrogation rights do not arise.'
"370 N.W.2d at 460."
Hardy, 531 So.2d at 887-88.
In Auto-Owners Insurance Co. v. Hudson, supra, this Court created a procedure for an insured victim to deal with what Hardy described as the "twilight zone that [the insured victim] is placed in between underinsured coverage and an insurer's right to subrogation." 531 So.2d at 887. The plaintiff in Auto-Owners, Hudson, was involved in an automobile accident with Otis Finklea, an employee of Phillips Feed Mill. Finklea's employer's insurance covered only $50,000 of damages in relation to the accident, and Hudson had suffered injuries in the amount of at least $70,000. Hudson notified his underinsured motorist insurance carrier, Auto-Owners, that he was negotiating a settlement agreement with Finklea's insurance company and that he intended to settle with Finklea for the $50,000 maximum coverage limit. Auto-Owners wrote a letter to Hudson, threatening that if Hudson signed a release of Finklea, then he would lose his right to the underinsurance coverage. Hudson, nevertheless, executed the release, which purported *337 to reserve Hudson's claims against Auto-Owners. Hudson then filed an action for a judgment declaring that he was entitled to underinsured motorist benefits from Auto-Owners. The trial court awarded Hudson $20,000, and we affirmed the judgment. In affirming that judgment, this Court held:
"When the tort-feasor's liability insurer has offered to pay the maximum of its liability limits, and it is undisputed that the damages exceed that amount and, further, exceed the amount of underinsured coverage available, the insured should give its underinsured motorist insurance carrier notice of this offered settlement and the underinsured motorist carrier should consent to the settlement and forgo any right of subrogation for any underinsured motorist coverage it may subsequently pay, or else pay to its insured the amount offered by the tort-feasor's insurer and preserve its right of subrogation."
Auto-Owners, 547 So.2d at 469.
The holding quoted above from Auto-Owners applies in this case, because the cases are similar factually; accordingly, we consider Progressive's argument in light of Auto-Owners, though Auto-Owners had not been decided at the time of the trial court's ruling. It is undisputed both that Hammonds's insurance carrier offered to pay and indeed, did pay, its maximum liability limits and that Fuller's damages exceeded that amount. It is also undisputed that Progressive did not pay any money to Fuller. What we must determine is whether Fuller gave reasonable notice to Progressive of Hammonds's offer to settle, so that when Progressive would not pay Fuller and Fuller executed the release, Progressive's subrogation rights were destroyed.
Though Progressive argues it did not have such notice, the record is without documentation to support this argument. On the other hand, the record does provide some evidence that Progressive did have notice. The March 5 letter written by Fuller's lawyer clearly states that Hammonds was insured by Alfa for only $25,000. The course of correspondence between Fuller's lawyer and Progressive, from March 5, 1987, through June 1987, indicates that Progressive knew Fuller intended to pursue his claims. After three months of correspondence with Progressive and nearly five months after the accident, Fuller finally signed Hammonds's release. Considering this evidence and considering that the record contains no evidence that Progressive did not have notice, we hold that Progressive had reasonable notice of Fuller's intent to settle with Hammonds and that Progressive had reasonable time to respond to Fuller's actions. Progressive's only response to Fuller was to send letters that repeatedly, over several months, promised to make a decision on Fuller's claim "in the near future." Progressive did not act reasonably in safeguarding its subrogation rights, and, because Fuller released Hammonds before Progressive acted to protect its subrogation rights, Progressive's subrogation rights were destroyed. Auto-Owners, supra; Hardy, supra, at 888.
We can affirm a judgment on a basis not asserted to the trial court, and we can affirm a judgment if we disagree with the reasoning of the trial court in entering the judgment, as long as the judgment itself is proper. Smith v. Equifax Services, Inc., 537 So.2d 463, 465 (Ala.1988). We do not mean to imply necessarily that the reasons given by the trial court for entering the summary judgment were completely wrong, but, rather, that the judgment is due to be affirmed on the basis of the principles discussed in Hardy, supra, and Auto-Owners, supra, both of which were decided after the trial court entered the judgment for Hammonds.
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, SHORES and HOUSTON, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
I dissent, for the same reasons set forth in my dissenting opinion in Auto-Owners *338 Ins. Co. v. Hudson, 547 So.2d 467 (Ala. 1989).
In view of what I consider to be an erroneous interpretation of Alabama's uninsured motorist statutes, the Legislature is now the only place where an insurer may go for relief, if it has been aggrieved.
STEAGALL, J., concurs.
NOTES
[1] Alfa is the successor to Alabama Farm Bureau Insurance Company.