570 So.2d 654 (1990)
SOUTHERN GUARANTY INSURANCE COMPANY
v.
Donna M. WELCH, et al.
89-218.
Supreme Court of Alabama.
September 28, 1990.
Rehearing Denied November 9, 1990.
*655 E. Elliott Barker and Charles J. Potts of Barker & Janecky, Mobile, for appellant.
Joseph M. Brown, Jr., and Andrew T. Citrin of Cunningham, Bounds, Yance, Crowder and Brown, Mobile, for appellees.
PER CURIAM.
Donna Welch was injured in a purse-snatching incident involving two minors, Chris Scott (who is not a party to this appeal) and Keith Hodges. The two minors drove up to Welch as she was walking with her mother across a parking lot and grabbed her purse from her shoulder, pulling her partially into the automobile and dragging her beside it for approximately 15 feet.
Welch and her husband, William,[1] sued Keith Hodges for damages based on allegations of negligence and wanton misconduct and sued his father, Thomas Hodges, for damages based on negligent entrustment of an automobile. They also sued Southern Guaranty Insurance Company, their automobile insurance carrier, for underinsured motorist benefits. Southern Guaranty cross-claimed against the Hodgeses for any amounts it might have to pay the Welches in underinsured motorist benefits.
Thomas Hodges had an automobile liability insurance policy with Aetna Casualty & Surety Company (hereinafter "Aetna") with a $25,000 limit. The Welches had two separate automobile insurance policies with Southern Guaranty that had combined underinsured motorist coverage limits of $160,000.
Southern Guaranty moved to sever the underinsured motorist claim and to opt out of the proceedings, pursuant to Lowe v. Nationwide Ins. Co., 521 So.2d 1309 (Ala. 1988). In that motion, Southern Guaranty stated that it elected not to participate, "fully understanding and acquiescing in the knowledge that it will be bound by the factfinder's decisions as to liability and damage." The trial court granted that motion.
Sometime on or before May 19, 1989, Aetna offered $25,000, the amount of its policy limits, to the Welches, who, in turn, asked Southern Guaranty to settle the case. After Southern Guaranty refused to settle, Aetna offered to allow it to take over the Hodgeses' defense. This is confirmed by an affidavit from the attorney Aetna hired to defend the Hodgeses, in which he stated:
"The Plaintiffs would not accept the $25,000 in full settlement of their claim because they felt the claim had a higher settlement value. They were actively pursuing an underinsured motorist claim against their own carrier. Sometime prior to May 19, 1989, I was authorized by Aetna and Keith Hodges to allow Southern Guaranty to take over the defense of Keith Hodges ... as they were the underinsured motorist carrier for the Plaintiffs and a claim had been made against them for underinsured motorist benefits. Attached is a copy of a letter I sent to Southern Guaranty's attorney confirming that Southern Guaranty did not wish to take over the defense of Keith Hodges."
That letter, dated May 19, 1989, states, in pertinent part:
"This will confirm that Southern Guaranty does not wish to take over the defense of Keith Hodges in the above case. I have discussed with you briefly my trial strategy which is simply to try and minimize damages in this terrible case. The compensatory damages are significant in that it appears that Mrs. Welch has not only suffered a physical injury but also a fairly significant psychological injury as reported by Dr. Renick. Also, this appears to be a case where punitive damages will likely be assessed in some amount against Keith Hodges. The facts of the accident [sic] are essentially without dispute and I am presently considering admitting liability at the outset.

*656 "If you disagree with this approach or have any additional thoughts as to how the case should be handled, please let me know and I will be glad to discuss them with you. Also, we will be happy to make our file available to you at any time prior to trial."
On the date set for trial, June 6, 1989, both sides waived their right to a jury trial and submitted the case to the trial court. Counsel for the Welches asked the trial court to award them $185,000, noting that the potential for punitive damages was "quite high." Counsel for the Hodgeses, as well as Keith's guardian ad litem, agreed to that amount because the Hodgeses "could be exposed to substantial damages over and above that amount ... and there is a potential for the claim to exceed this amount." Notwithstanding that it had had an opportunity to "opt back in" the case, Southern Guaranty did not participate in the June 6 proceedings. After hearing the arguments of counsel, the trial court entered a judgment against the Hodgeses and Southern Guaranty for $185,000.
Southern Guaranty argues on appeal that the trial court's judgment amounted to a ratification of a settlement between the Welches and the Hodgeses; that it had no notice of that settlement; and that, by deciding to opt out, it agreed to be bound by a factfinder's decision as to liability and damages, not by the agreement between the Welches and the Hodgeses that it says the trial court accepted. The Welches, on the other hand, argue that by failing to assume the Hodgeses' defense, Southern Guaranty waived any right to complain about the trial court's judgment, and that this case should be affirmed based on Auto-Owners Ins. Co. v. Hudson, 547 So.2d 467 (Ala.1989). Southern Guaranty counters by arguing that that case, which was not decided until after the trial court had entered its judgment in this case, is inapplicable.
The same situation arose in Progressive Specialty Ins. Co. v. Hammonds, 551 So.2d 333 (Ala.1989), where this Court applied Auto-Owners Ins. Co. v. Hudson, even though that case had not been decided at the time of the trial court's ruling:
"We can affirm a judgment on a basis not asserted to the trial court, and we can affirm a judgment if we disagree with the reasoning of the trial court in entering the judgment, as long as the judgment itself is proper. Smith v. Equifax Services, Inc., 537 So.2d 463, 465 (Ala.1988).... [T]he judgment is due to be affirmed on the basis of the principles discussed in Hardy [v. Progressive Ins. Co., 531 So.2d 885 (Ala. 1988),] and Auto-Owners, supra, both of which were decided after the trial court entered the judgment for Hammonds."
551 So.2d at 337.
In Auto-Owners Ins. Co. v. Hudson, the injured insured, Hudson, accepted the $50,000 liability limit from the tort-feasor's insurer, State Farm Insurance Company, and released both the tort-feasor and State Farm, as well as the tort-feasor's employer. Because Hudson's damages amounted to $70,000, he sought $20,000 in underinsured motorist benefits from his insurer, Auto-Owners. Hudson had notified Auto-Owners after the accident that he was negotiating a settlement agreement with State Farm. Auto-Owners refused to pay, claiming that Hudson had forfeited his right to underinsured coverage when he executed the release. This Court disagreed, stating:
"When the tort-feasor's liability insurer has offered to pay the maximum of its liability limits, and it is undisputed that the damages exceed that amount and, further, exceed the amount of underinsured coverage available, the insured should give its underinsured motorist insurance carrier notice of this offered settlement and the underinsured motorist carrier should consent to the settlement and forgo any right of subrogation for any underinsured motorist coverage it may subsequently pay, or else pay to its insured the amount offered by the tort-feasor's insurer and preserve its right of subrogation."
547 So.2d at 469 (emphasis added). See, also, Hardy v. Progressive Ins. Co., 531 So.2d 885 (Ala.1988) (settlement and release *657 of an underinsured tort-feasor will not automatically preclude recovery of underinsured benefits where insured gives his underinsurance carrier notice of the tentative settlement prior to release).
As in the instant case, the underinsurer in Progressive Specialty Ins. Co. v. Hammonds, Progressive Specialty, claimed that it had no notice from its insured, Fuller, of the offer of the tort-feasor, Hammonds, to settle and that, consequently, Fuller's release of Hammonds did not destroy Progressive Specialty's subrogation rights. The record showed that Fuller's lawyer had written Progressive Specialty three months before Fuller signed Hammonds's release, stating that Hammonds was insured for only $25,000 and that Fuller intended to pursue his claims.[2] Progressive Specialty responded by sending Fuller several letters over the next few months in which it promised to make a decision on Fuller's claim "in the near future." 551 So.2d at 337. This Court held that Progressive Specialty did have sufficient notice and that it did not act "reasonably" in protecting its subrogation rights.
A recent case factually very similar to the present one reached the same result regarding notice as did Progressive Specialty Ins. Co. v. Hammonds. In Champion Ins. Co. v. Denney, 555 So.2d 137 (Ala. 1989), the insured, Denney, received a $100,000 default judgment against the tort-feasor after she had forwarded a copy of the summons and complaint to her insurer, Champion. Denney later sued Champion for the uninsured motorist benefits under her policy, $20,000. The trial court entered a summary judgment for her in that amount and this Court affirmed, holding that as long as an insurer has notice and an adequate opportunity to intervene and present any defenses and arguments necessary to protect its position, it will be bound by such a judgment.
As these cases make clear, our focus has been on whether an underinsured motorist insurance carrier has had adequate notice of potential settlements by its insured to bind it to subsequent judgments against it. We find from the record that Southern Guaranty had sufficient notice of the likelihood of a settlement between the Welches and the Hodgeses. Under Lowe v. Nationwide Ins. Co., supra, after Southern Guaranty was joined as a defendant in the Welches' suit, it had the choice of either participating in the trial or "opting out." In either case, it "would be bound by the factfinder's decisions on the issues of liability and damages." 521 So.2d at 1310.
Once it had notice of the possible settlement between the Welches and the Hodgeses, Southern Guaranty should have "opted back in" to preserve its rights under the policy. Having decided not to participate in the trial, Southern Guaranty will not now be heard to complain of the judgment against it. The judgment of $185,000 for the Welches is, therefore, affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
This case seemingly follows this Court's decisions in Lowe v. Nationwide Ins. Co., 521 So.2d 1309 (Ala.1988), and Auto-Owners Ins. Co. v. Hudson, 547 So.2d 467 (Ala. 1989), both of which establish a principle of law with which I disagree. I take this opportunity to point out once again why I think that those decisions fail to protect the contract rights of an insurer that is faced with a choice of "opting in or out" of a pending case.
As I stated in my special concurrence in Lowe,[3] our Rules of Civil Procedure, before the Lowe decision, were quite specific about the joinder of claims and remedies *658 when there was a liability insurance coverage question associated with the case. See Rule 18(c), Ala.R.Civ.P., and the commentary to Rule 42, involving consolidation of trials, wherein it is stated that "[t]hese rules make severance mandatory where a damage claim and a liability insurance coverage question are presented in the same jury action," and that "Rule 18(c) precludes consolidation when the issues are presented in separate jury actions."
This decision, I believe, expands the Lowe rule even further, in holding that an insurer, which has opted out of a pending case, is bound by a judgment entered by the trial court pursuant to a settlement agreement as to which the insurer was not given notice and an opportunity to be heard. The effect of the decision is to put insurers who elect to opt out of a case in the untenable position of being bound by any settlement made by the parties in the pending case and being bound to pay benefits based upon a settlement agreement rather than on a finding of liability and damages by a factfinder, whether judge or jury.
This case points out so graphically how an insurer, by being required to opt in or opt out of a lawsuit, can have its rights completely frustrated under its contract and under the rules of this Court.
I realize the utility of having all issues in a lawsuit, including the rights of a party like Southern Guaranty, settled in one action, but this Court, when it adopted Rule 18(c), Ala.R.Civ.P., intended that claims for damages and questions of liability insurance coverage should be severed. It may be that Rule 18(c) is no longer a good rule, but if that is the case, why not amend it properly rather than by a court decision like Lowe?
Clearly, Southern Guaranty's contract rights should be protected in any event. Forcing it to pay what it did not agree to pay is a method of taking property without due process. Insurers, like everyone else, should be accorded the right to be heard. I dissent.
STEAGALL, Justice (dissenting).
I believe that Lowe v. Nationwide Ins. Co., 521 So.2d 1309 (Ala.1988), requires a trial by a factfinder (either judge or jury) on the issues of liability and damages. Lowe holds:
"If the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would be bound by the factfinder's decisions on the issues of liability and damages."
521 So.2d at 1310 (emphasis added).
In this case, as the majority states, Southern Guaranty, by not participating, agreed to be "bound by the factfinder's decisions." But there was no trial and thus no decision by a factfinder; there was, instead, a settlement between the parties. To hold that Southern Guaranty lost all of its rights under its policy without a trial sets bad precedent and ignores the mandates of Lowe.
I, therefore, respectfully dissent.
NOTES
[1] William's claim was based on loss of consortium.
[2] The parties conceded that Fuller's damages exceeded $25,000.
[3] I concurred specially in Lowe, but only because counsel for the appellee confessed error in that case. In Lowe, I expressed the opinion that an insurer should not be forced to "opt in or out" of a pending proceeding in order to protect its rights.