PITTMAN, Judge.
 

 This appeal concerns an insurer’s right to deny a claim for underinsured-motorist (“UIM”) insurance benefits on the basis that the insurer did not consent to its insureds’ settlement of their claim against the alleged tortfeasor.
 

 In January 2006, John P. Morgan ánd Darlene K. Morgan (“the insureds”) brought an action against their insurer, Safeway Insurance Company of Alabama, Inc. (“Safeway”), alleging that an underin-sured motorist had negligently caused or allowed a motor vehicle to collide with a vehicle they were occupying and that, as a result, the insureds had suffered permanent injuries; that the insureds had notified Safeway of the pendency of an action against the underinsured motorist and had later made a claim for UIM benefits under the Safeway insurance policy issued to them; and that Safeway had denied their UIM insurance claim. The insureds averred that Safeway had breached the policy by failing to pay the claim, and they further averred that Safeway had tortiously acted in bad faith in denying that claim. Safeway admitted in its answer that the insureds had asserted a claim for UIM benefits, but Safeway otherwise denied the insureds’ allegations.
 

 In March 2006, the insureds filed a motion for a partial summary judgment concerning the issue of Safeway’s contractual liability that was based upon the pleadings and an affidavit of their attorney. In that affidavit, the attorney testified that he had notified counsel for Safeway of the pen-dency of the insureds’ action against the alleged tortfeasor; photocopies of correspondence attached to the affidavit indicate that Safeway’s counsel requested in May 2005, and was sent in June 2005, copies of the pleadings in that action. The attorney further testified that Safeway did not intervene in the insureds’ action while it was pending. According to the insureds’ attorney’s affidavit, he notified counsel for Safeway on October 17, 2005, that the alleged tortfeasor’s liability insurer had agreed to pay the monetary limits of coverage under its policy of insurance, and he “presented a demand for additional sums” to Safeway at that time. The insureds’ attorney testified that on October 27, 2005, 10 days later, the sum of $20,000 was paid to the insureds on behalf of the alleged tortfeasor in consideration of the dismissal of their tort action; a copy of a subsequent letter from Safeway’s counsel that was attached to the insureds’ attorney’s affidavit demonstrates that Safeway declined to pay UIM benefits to the insureds because Safeway had not consented to the insureds’ settlement.
 

 
 *383
 
 In response, Safeway sought a summary judgment in its favor as to all the insureds’ claims; that motion was supported by an affidavit of Safeway’s assistant claims manager and by other materials, including copies of the pertinent Safeway insurance policy (which excluded UIM coverage for any person “[i]f that person or the legal representative settles the bodily injury claim without notice to us and our consent”) and written correspondence between the insureds’ attorney and counsel for Safeway concerning the insureds’ action against the alleged tortfeasor and their UIM claim. The parties filed briefs in support of their positions, and the trial court, after a hearing, denied the insureds’ motion, granted Safeway’s motion, and entered a summary judgment in favor of Safeway. The Alabama Supreme Court transferred the insureds’ appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 After the Alabama Legislature had amended § 32 — 7—23(b)(4), Ala.Code 1975, in 1984 so as to include UIM coverage within the classes of coverages that generally must be afforded to insureds under automobile-liability insurance policies delivered or issued for delivery within Alabama, the Alabama Supreme Court recognized that UIM coverage amounted to “umbrella coverage” as to which an insurer would have a right of subrogation “for sums paid ... in excess of the tortfeasor’s limits of liability.”
 
 Hardy v. Progressive Ins. Co.,
 
 531 So.2d 885, 887 (Ala.1988). Building upon its acknowledgment in
 
 Hardy
 
 that “some courts ha[d] fashioned a procedure to release an insured victim from the twilight zone that he is placed in between underinsured coverage and an insurer’s right to subrogation”
 
 (id.),
 
 the Alabama Supreme Court proceeded to join those courts in
 
 Lambert v. State Farm Mutual Automobile Insurance Co.,
 
 576 So.2d 160 (Ala. 1991). The Alabama Supreme Court in
 
 Lambert
 
 provided a “road map” that comprises six general rules that govern “every case in which the rights of the insured and the underinsured motorist carrier may conflict”:
 

 “(1) The insured, or the insured’s counsel, should give notice to the under-insured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured’s damages may exceed the tortfeasor’s limits of liability coverage.
 

 “(2) If the tort-feasor’s liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured’s claim against the tort-fea-sor, and if the settlement would release the tort-feasor from all liability, then
 
 the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
 

 “(3)
 
 At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor’s intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal,
 
 so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist benefits.
 
 If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it
 
 
 *384
 

 proposes with regard to the claim for underinsured motorist benefits.
 

 “(4)
 
 The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured’s claim and to notify its insured of its proposed action.
 

 “(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tortfea-sor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tortfeasor’s insurer.
 

 “(6) If the underinsured motorist insurance carrier wants to protect its sub-rogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier’s insured, advance to its insured an amount equal to the tort-feasor’s settlement offer.”
 

 576 So.2d at 167 (emphasis added).
 

 In this case, the insureds’ attorney sent a letter to counsel for Safeway on October 17, 2005, indicating that an offer of the alleged tortfeasor’s automobile-liability policy limits had been made and requesting that Safeway pay its monetary limits of UIM coverage. The medical records and bills supplied with that letter were forwarded by Safeway’s counsel to Safeway on October 18, 2005. On October 27, 2005, the insureds entered into an agreement releasing the alleged tortfeasor from liability in consideration of a payment equaling the monetary limits of the tortfeasor’s automobile-liability policy. In total, 10 days elapsed from the insureds’ notification to Safeway of the imminence of the policy-limits settlement and the insureds’ release of the alleged tortfeasor.
 

 In
 
 Lambert,
 
 our Supreme Court stated that a settlement should not take place without a UIM carrier having a “reasonable time” within which to investigate and act on an insured’s UIM claim. Although the insureds, at the request of counsel for Safeway in May 2005, did forward in June 2005 the pleadings in their action against the alleged tortfeasor, there is no indication from the correspondence between the two attorneys that the insureds did more at that time than indicate the
 
 possibility
 
 of a UIM claim, and we cannot accept the insureds’ position that the June 2005 correspondence amounts to “notice of the claim for underinsured motorist benefits” triggering a duty to investigate. As the Alabama Supreme Court stated in
 
 Allstate Insurance Co. v. Beavers,
 
 611 So.2d 348, 352 (Ala.1992), in rejecting a similar contention, “it is the notice of the
 
 proposed settlement
 
 that legally, and logically, requires action within a reasonable time by the underinsured motorist insurance carrier” under
 
 Lambert.
 

 Although the Alabama Supreme Court in
 
 Lambert
 
 did not conclusively establish a particular period of time as “reasonable,” it cited statutes from North Carolina and Florida setting forth a 30-day period within which a UIM carrier may consider whether to consent to a proposed settlement between its insured and an alleged tortfeasor. 576 So.2d at 166 n. 4. Moreover, at least 10 other states have adopted statutes establishing procedures similar to those outlined in
 
 Lambert
 
 providing for either a 30-day or a 60-day window in this context.
 
 See Granger v. Government Employees Ins. Co.,
 
 111 Haw. 160, 167-68, 140 P.3d 393, 400-01 (2006) (collecting authorities). Finally, the Alabama Supreme Court in
 
 Hardy, supra,
 
 cited with approval
 
 Schmidt v. Clothier,
 
 338 N.W.2d 256
 
 *385
 
 (Minn.1983), an opinion holding that a 30-day period after the provision of written notice of a settlement agreement was a reasonable time.
 
 Hardy,
 
 531 So.2d at 887, 888. We thus find ourselves in agreement with the statement in a leading treatise on Alabama automobile-insurance law that “[although the [Alabama] cases do not define a ‘reasonable’ period of time, 30 days would seem to be a ‘reasonable’ period of time absent some compelling circumstances.” Ronald G. Davenport,
 
 Alabama Automobile Insurance Law
 
 § 33:12 (3d ed.2002).
 

 Proceeding from those' authorities, we can discern that
 
 Lambert
 
 does not countenance an insured’s allowing a UIM insurer no more than 10 days after giving notice of a potential settlement and UIM claim within which to investigate and to take any appropriate action on the claim before executing a settlement agreement releasing the alleged tortfeasor. Our conclusion is only strengthened by reference to
 
 Brant-ley v. State Farm Mutual Automobile Insurance Co.,
 
 586 So.2d 184 (Ala.1991), in which the Alabama Supreme Court held that affording a UIM carrier 10 days’ notice before releasing a tortfeasor as to whom the UIM carrier might have had subrogation rights did not give that carrier an adequate opportunity under
 
 Lambert
 
 to protect those rights.
 
 [1]
 
 We therefore agree with Safeway that the insureds in this case did not comply with the “reasonable time” standard of
 
 Lambert
 
 such that Safeway can properly be deemed to have waived its rights under its policy to consent to or object to the proposed settlement. Because Safeway did not waive, and was not estopped from asserting, its authority to determine whether to consent to the proposed settlement in this case, the failure of the insureds to obtain Safeway’s consent barred their claim for UIM benefits, and the trial court correctly entered the summary judgment in favor of Safeway.
 

 AFFIRMED.
 

 BRYAN, THOMAS, and MOORE, JJ., concur.
 

 THOMPSON, P. J., concurs in the result, without writing.
 

 [1]
 

 .
 
 Southern Guaranty Insurance Co. v. Welch,
 
 570 So.2d 654 (Ala.1990), which predated
 
 Lambert
 
 and which was cited by the insureds in their principal brief, is not to the contrary; in that case, 18 days’ notice to the UIM carrier of a proposed settlement and release was afforded.