863 So.2d 1130 (2003)
BUCO BUILDING CONSTRUCTORS, INC.
v.
Luther MYRICK.
2011237.
Court of Civil Appeals of Alabama.
May 9, 2003.
*1131 Anthony N. Fox and Freddie N. Harrington, Jr., of Clark & Scott, P.C., Birmingham, for appellant.
David H. Marsh, Susan J. Silvernail, and Thomas M. Powell of Marsh, Rickard & Bryan, P.C., Birmingham, for appellee.
PITTMAN, Judge.
This appeal concerns an employer's responsibility to provide medical benefits to an employee after the employee has received a payment from the proceeds of a settlement of a separate action brought by the employee against a third-party tortfeasor.
In July 2002 Luther Myrick ("the employee") filed an "emergency motion" requesting that the Jefferson Circuit Court issue an order directing Buco Building Constructors, Inc. ("the employer"), to "pay benefits which are reasonable and necessary" for his present and future medical care. An exhibit to that motion indicated that the parties had entered into a consent judgment in June 1999 with respect to a workers'-compensation action filed by the employee against the employer in 1997; under that consent judgment, the employer remained responsible for future medical expenses incurred by the employee. A second exhibit to the employee's motion indicated that in September 2001, a separate third-party tort action brought by the employee against A & S Building Systems and NCI Building Systems had been dismissed pursuant to a settlement agreement, as the result of which the employee was paid $600,000. The employee's motion was also supported by correspondence sent by the employee's counsel to counsel for the employer and by an affidavit of the employee's counsel. The employer filed a response opposing the employee's motion; its response was supported by an affidavit of its counsel. The employee then filed a motion to hold the employer in contempt. The trial court entered a judgment denying the employee's contempt motion, finding that "there was a genuine misunderstanding *1132 between the parties," but granted the employee's motion to require payment of future medical expenses on the basis that "[t]he Alabama Worker[s'] Compensation Act is remedial in nature and should be liberally construed to effectuate the intended beneficial purposes." The employer then appealed to this court.
There is no indication in the record that the trial court held a hearing on the employee's motions or that it considered any evidentiary materials other than written documents submitted by the parties. Under these circumstances, this court sits in judgment on the evidence and our review of the trial court's judgment is de novo. See, e.g., Hacker v. Carlisle, 388 So.2d 947, 950 (Ala.1980).
The record reveals the following pertinent facts. The employee sued to obtain workers'-compensation benefits from the employer based upon a workplace injury to his back that he suffered in September 1997. Although the parties disputed the extent of the employee's disability resulting from that injury, the parties, in June 1999, agreed to a consent judgment on the employee's workers'-compensation claim. Under that judgment, the employee received a lump sum of $56,000 (less an attorney fee of 15%) as compensation for his injury, while the employer was to "remain responsible for all future medical benefits to which the [employee] is entitled under" the Workers' Compensation Act.
After the workers'-compensation action had been resolved, the employee brought an action against A & S Building Systems and NCI Building Systems in which he alleged that those parties were responsible for his workplace injury. After that third-party action had been initiated, counsel for the employee entered into settlement negotiations with counsel for the employer regarding the employer's potential subrogation claim against any proceeds obtained by the employee as a result of that third-party action; at that time, the employer and/or its insurance carrier had expended $102,030 toward providing medical benefits to the employee under the Workers' Compensation Act. According to the affidavit filed by the employee's counsel, he told counsel for the employer that settlement of the third-party action would be possible only if the employee's future medical benefits would remain open (i.e., only if the employer remained responsible for the employee's future medical expenses arising from the injury). The affidavits submitted by counsel for both parties indicate that the parties' attorneys agreed in August 2001 that $51,015 (i.e., half of the employer's expenditures) would be paid to the employer from any proceeds obtained by the employee through settlement of the third-party action. A letter dated August 17, 2001, sent by counsel for the employee to the employer's counsel contains the following pertinent statements:
"This will confirm our telephone conversation of August 16, 2001, during which we reached an agreement regarding the outstanding subrogation in this case. Specifically, we have agreed to reimburse AIG Claims Services [the employer's workers'-compensation insurance carrier] 50% of the amounts expended in worker[s'] compensation benefits and medical benefits paid to date. It is my understanding that the total benefits paid are $102,030.00. Therefore, one-half of this amount equals $51,015.00.
"This will also confirm that all future medicals under the Alabama Worker[s'] Compensation Act shall remain open and the worker[s'] compensation carrier will remain obligated to pay future claims under the Act.
"As per your instructions, I will have a check made payable to AIG Claims Services and sent to your office as soon *1133 as I receive the settlement proceeds in connection with the third party case."
The affidavit of the employer's counsel indicates that counsel for the employee, while negotiating a settlement of the third-party action with the defendants in that action, inquired about a potential reduction of the employer's subrogation lien upon proceeds that might be recovered by the employee from the third parties. According to that affidavit, the employer advised the employee's attorneys that it would not compromise its lien or subrogation interests, and that the parties had reached no agreements concerning the employer's right to subrogation as to future medical benefits. However, on September 28, 2001, after the parties to the third-party action had settled that action and the employee had been paid,[1] counsel for the employee sent a check for $51,015 to counsel for the employer[2] accompanied by a letter stating that that check represented "full and final payment of the amount owed by [the employee] to AIG Claims Services in connection with his workers' compensation lien." Nevertheless, counsel for the employer advised AIG Claims Services that it "had a right to subrogate against future medical benefits the sum of $48,985.00, and that after that amount of medical bills was incurred by the [employee, AIG Claims Services] would be required to provide and pay for future medical benefits" to the employee.
In January 2002, the employee reported to an orthopedic medical clinic and complained of bilateral arm and leg pain; the employee's physician prescribed a magnetic-resonance-imaging scan of the employee's cervical and lumbar spine and nerve conduction studies on both legs. However, when the medical provider telephoned the employer's insurance carrier regarding payment for the medical services rendered to the employee, the carrier's representative refused to make further medical payments until the employee had paid $48,985 out of his own pocket.
The employer contends that the trial court should not have required it to provide medical benefits to the employee without obtaining further payments as to its subrogation claim. The employer correctly argues that under Ala.Code 1975, § 25-5-11(a), as amended in 1992, an employer and/or an employer's workers'-compensation insurance carrier has a right to subrogation with respect to employee recoveries against third parties to the extent of the cost of "medical and vocational benefits expended by the employer on behalf of the employee," a right that has been construed by our Supreme Court to extend to "future medical benefits that have not been paid, but which the law requires the employer to pay." Ex parte BE & K Constr. Co., 728 So.2d 621, 623 (Ala.1998). Thus, as a general rule, when an injured employee recovers damages from a third-party tortfeasor for an injury covered under the Workers' Compensation Act and for which an employer has expended sums for providing medical or vocational benefits to the employee, the employer is to resume paying such medical expenses only "[w]hen the portion of the third-party recovery that is attributable to medical expenses is exhausted." Ex parte Miller & Miller Constr. Co., 736 So.2d 1104, 1105 (Ala.1999); accord, Skilstaf, Inc. v. Williams, [Ms. 2001172, Sept. 20, 2002] ___ So.2d___ (Ala.Civ.App.2002). Thus, the trial court erred in interpreting the Workers' Compensation Act as preventing *1134 the employer from claiming an interest in the employee's third-party recovery beyond the $51,015 previously reimbursed.
The employee contends that Ex parte BE & K does not apply here because, he says, the employer has not requested a court with "proper jurisdiction" to attribute any of the third-party recovery as payments for future medical expenses. According to the employee, only the federal district court in which his third-party action was filed would have the authority to determine the amount, if any, of the proceeds properly allocated to the employee's future medical expenses. We acknowledge that the Supreme Court in Ex parte BE & K stated that "it is in the capable hands of the trial judges presiding over the third-party actions to determine to their satisfaction the amount of each award in a third-party action to be attributed to the employee's medical (or vocational) expenses." 728 So.2d at 624.
However, in Ex parte Miller & Miller Construction Co., supra, the Supreme Court directed the trial court in which an employee's workers'-compensation action had been pending to "conduct a hearing to determine, using equitable principles applicable to subrogation rights, which part of [that employee's] settlement is attributable to medical expenses" and should "enter an order allowing [the employer] to be subrogated to that portion of [the employee's] third-party recovery that is attributable to the future medical expenses [the employer] would be legally required to pay." 736 So.2d at 1105 (footnote omitted). Similarly, in Skilstaf, we remanded a cause for the trial court having jurisdiction over an employee's workers'-compensation action "to reapportion [a] settlement" of a third-party claim that had been settled under terms that expressly included no allocation for future medical or vocational benefits. ___ So.2d at ___.
Thus, where trial courts in which third-party claims have been brought make no determination concerning the proper allocation of settlement proceeds with respect to future medical expenses, or erroneously determine that no portion of a third-party recovery is allocable to such expenses, it devolves upon courts hearing employees' workers'-compensation claims, in the first instance, to rectify such errors or omissions by "fairly apportion[ing]" third-party recoveries so as to equitably determine what portions thereof are "attributable to medical (and vocational) expenses, both past and future." Ex parte BE & K, 728 So.2d at 624.[3] We therefore conclude that the employer's subrogation rights are not foreclosed by its nonparticipation in the third-party action.
The employee also argues that the trial court's judgment directing the employer to provide future medical benefits without further subrogation payments from the employee's third-party recovery is consistent with the proper application of the doctrine of accord and satisfaction, citing Ex parte Meztista, 845 So.2d 795 (Ala. 2001). Although that doctrine was not invoked in the trial court, the issue of its applicability has been fully briefed by the parties, and it is well settled that a correct judgment may be affirmed, even on a basis not asserted in the trial court. See, e.g., Progressive Specialty Ins. Co. v. Hammonds, 551 So.2d 333, 337 (Ala.1989).
An employee's obligation to satisfy an employer's subrogation interest may be extinguished by application of the doctrine of accord and satisfaction, which has been codified by our legislature. Section 8-1-20, *1135 Ala.Code 1975, defines "accord" as a party's agreement to accept something different from, or less than, what that party claims or to which that party is entitled "in extinction of an obligation." Likewise, § 8-1-22 defines "satisfaction" as the acceptance of the consideration of accord and states that that acceptance extinguishes the underlying obligation.
The legal principles underlying the doctrine of accord and satisfaction are not new to Alabama law, nor are they generally complex. For example, in Ex parte Meztista, supra, the Alabama Supreme Court considered the effect of a partner's negotiation of a check drawn on a partnership account and bearing the legend "final payment/payment in full" upon that partner's right to subsequently assert claims against the partnership and the other partner that arose out of the conduct of the partnership. Applying principles of accord and satisfaction to the facts presented, the Supreme Court concluded that when the partner who received the check "endorsed and deposited the check, she agreed to the condition upon which it was offered" and that she was "estopped to deny that agreement." 845 So.2d at 798.
In this case, the August 17, 2001, letter of the employee's counsel states that the parties had reached an agreement "regarding the outstanding subrogation" whereunder the employee would pay the employer $51,015. When a check for $51,015 was forwarded to counsel for the employer, the letter accompanying the check stated that that check represented full and final payment of the amount owed "in connection with [the] workers'-compensation lien." However, the check sent by the employee and negotiated by the employer's carrier does not appear in the record, which distinguishes this case from Meztista (in which the existence of the legend "final payment/payment in full" on the check itself was held to constitute an accord and satisfaction).
Moreover, while the affidavit of the employee's counsel states that he "would never have agreed to pay $51,015.00 to the employer without having assurances that [the employee]'s future medical bills would be covered and that the amount would completely satisfy any subrogation claim by the employer" (emphasis added), the affidavit submitted by the employer's counsel indicates that there was no meeting of the minds on the latter point. Instead, counsel for the employer affirmed that he had advised the employee's attorneys that the employer "would not compromise its lien or subrogation interest" and stated that "no conversations" took place between the parties "where the issue of the employer's waiving its right to subrogate against future medical benefits [were] discussed."
Although the affidavits of both counsel indicate that the employee's counsel insisted (and the employer's counsel agreed) that future medical benefits should remain "open," i.e., that the employer should remain responsible for paying for the employee's medical expenses, that agreement is not the same as a knowing and voluntary waiver of the employer's right to seek subrogation as to such future medical payments (which right would ripen only upon the expenditure of sums on behalf of the employee's medical care). Indeed, in refusing to sanction the employer for contempt, the trial court's judgment expressly concluded that "there was a genuine misunderstanding between the parties," which indicates a lack of a true "meeting of the minds" as to the issue of subrogation for future medical benefits left open by the parties.
After reviewing the record and sitting in judgment upon the documentary evidence presented by the parties, as the applicable *1136 standard of review mandates, we conclude that the employee failed to demonstrate that the employer agreed to accept $51,015 as full payment "in extinction of" the employee's legal obligation to reimburse the employer for its future medical payments on his behalf. Therefore, the trial court erred in directing the employer to pay the employee's future medical expenses arising from his workplace injury "without further subrogation payments." As a result, we reverse the trial court's judgment and remand the cause for the trial court to "conduct a hearing to determine, using equitable principles applicable to subrogation rights, which part of [the third-party] settlement is attributable to [future] medical expenses." Ex parte Miller & Miller Constr. Co., 736 So.2d at 1105 (footnote omitted). We further note that "[w]hen the portion of the third-party recovery that is attributable to medical expenses is exhausted, [the employer] will then be required to resume payment of medical expenses." Ex parte Miller & Miller Constr. Co., 736 So.2d at 1105 (emphasis added).
REVERSED AND REMANDED.
CRAWLEY, J., concurs.
YATES, P.J., and THOMPSON, J., concur in the result.
MURDOCK, J., dissents.
YATES, Presiding Judge, concurring in the result.
I concur in the result reached by the main opinion; however, I write to note my hesitancy in deciding the issue relating to the doctrine of accord and satisfaction without the trial court's having first decided the issue.
MURDOCK, Judge, dissenting.
Unlike the record in Skilstaf, Inc. v. Williams, [Ms. 2001172, Sept. 20, 2002] ___ So.2d ___ (Ala.Civ.App.2002), the record in the present case does indicate an equitable defense to the employer's right to subrogation for medical expenses. See Skilstaf, ___ So.2d at ___ (Murdock, J., concurring in part and concurring in the result in part). Based on the record presented in this case and applicable law, I must conclude that, as to the proceeds of the particular third-party lawsuit at issue, there was an accord and satisfaction as to the employer's subrogation rights and the employer should be estopped from asserting subrogation rights as to medical expenses beyond the amount of $51,015. See Ex parte BE & K Constr. Co., 728 So.2d 621 (Ala.1998) (holding that the availability of subrogation as to medical expenses is controlled by equitable principles of subrogation).
I therefore must respectfully dissent.
NOTES
[1] According to the affidavit of the employer's counsel, the amount of the settlement was initially represented to have been $200,000; however, the actual amount of that settlement was $600,000.
[2] The check does not appear in the record.
[3] As we noted in Skilstaf, "apportionment is not purely a question of fact solely dependent upon the intention of the settling parties," but is instead "a mixed question of law and fact." ___ So.2d at ___.